IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
WINSTON-SALEM DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| JEFFREY JOHN CHRISTIANSEN | ) | Case No. 08-50871 |
| | ) | |
| Debtor. | ) | |
| | ) | |

## MEMORANDUM OPINION

This matter came before the Court on December 9, 2008 upon the Motion of Bankruptcy Administrator for Dismissal of Case Pursuant to Section 707(b)(3) (the "Motion to Dismiss") filed by the United States Bankruptcy Administrator (the "Bankruptcy Administrator") on August 6, 2008.  At the hearing, Jeffrey P. Farran appeared on behalf of the above-referenced debtor (the "Debtor") and Robert E. Price, Jr. appeared on behalf of the United States Bankruptcy Administrator.  After consideration of the Motion to Dismiss, the pleadings, the evidence presented at the hearing, the arguments of the parties, and the relevant law, the Court will grant the Motion to Dismiss.

## I.  JURISDICTION

The Court has jurisdiction over the subject matter of this proceeding pursuant to 28 U.S.C. §§ 151, 157 and 1334, and the General Order of Reference entered by the United States District Court for the Middle District of North Carolina on August 15, 1984.  This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A) which this Court has the jurisdiction to hear and determine.

## II.  FACTS

1

On May 23, 2008, the Debtor filed for bankruptcy relief under Chapter 7 of the Bankruptcy Code.  The Debtor has a 16-year-old child (the "Child") for whom he pays child support.  The Debtor testified that he declared bankruptcy because his income had been reduced.  The Debtor works at a vehicle manufacturing facility.  He testified that he had reduced working hours in February and March of 2008, then went on disability leave from June 16, 2008 to July 30, 2008.  After that, the Debtor voluntarily stepped down from a higher paying position as shop steward and is now an assembly technician.

The Debtor filed his Form B22A Statement of Current Monthly Income and Means Test Calculation (the "Form B22A") with his petition.  On the Form B22A, the Debtor reported current monthly income of $3,538.00 (line 12) and annualized income of $42,456.00 (line 13).  The median family income for a family of one in North Carolina is $36,271.00 (line 14).  After subtracting the allowed deductions, the Debtor reports negative $693.00 of monthly disposable income under Section 707(b)(2) (line 50).  The Debtor's 60-month disposable income is negative $41,580.00 ($693.00 x 60) (line 51).

The Debtor filed all of the necessary schedules with his petition.  The Debtor's Schedule A shows that he owns no real property.  Schedule B shows that he owns personal property valued at $35,929.00, including two vehicles totaling $7,000.00 in value, and a 401(k) account valued at $27,000.00 (the "401(k)").  By the time of the hearing, the value of the 401(k) had dropped to $16,900.00.  Schedule D indicates that the Debtor owes only $2,684.00 on his secured claims.  The Debtors' unsecured debt, as reflected on Schedule F, totals $31,773.00, including one judgment debt for $16,069.00.

The Debtor's Schedule I shows an average net monthly income of $1,836.00.  The

Debtor's gross wages, minus payroll deductions of taxes, insurance, union dues, and United Way contributions, equal $2,529.00.  The Debtor deducted from his paycheck a 401(k) loan repayment of $254.00 (the "401(k) Loan Repayment") and a 401(k) contribution of $439.00 (the "401(k) Contribution"), leaving net income of $1,836.00 on Schedule I.  The 401(k) Loan Repayment is made up of payments for two 401(k) loans.  The Debtor repays the first 401(k) loan (the "First 401(k) Loan") in the amount of $5,200.00 with weekly installments of $43.92; the First 401(k) Loan will be paid in full by April of 2011. The Debtor repays the second 401(k) loan (the "Second 401(k) Loan") in the amount of $700.00 with weekly installments of  $14.62; the Second 401(k) Loan will be paid in full by October of 2009.  On the date of his petition, the Debtor's 401(k) Contribution was 12% of the Debtor's paycheck.  The Debtor testified at the hearing that he recently reduced the percentage that he contributed to 6%, or an average of $220.00 per month.

The Debtor's Schedule J showed average monthly expenses totaling $1,828.00, leaving $8.00 in monthly net income. As part of his Schedule J expenses, the Debtor pays $433.00 per month in child support (the "Child Support").  The Debtor has agreed to pay child support until the Child is either eighteen years old or until he graduates high school, whichever is later.  The Child will turn eighteen in March of 2010 and is scheduled to graduate from high school in June of 2010.

On May 27, 2008, the Bankruptcy Administrator filed a Statement that no Presumption of Abuse has Arisen Under 11 U.S.C. §707(b)(2), but on August 8, 2008, the Bankruptcy Administrator filed the Motion to Dismiss based on Section 707(b)(3) of the Bankruptcy Code. The Bankruptcy Administrator argues that the Debtor has the ability to repay debts and has an

unreasonable budget due to the 401(k) Loan Repayments, the 401(k) Contribution, and the short

duration of his Child Support obligations.

### III. DISCUSSION

The Bankruptcy Administrator seeks dismissal of the Debtors' case pursuant to Section

707(b)(3) of the Bankruptcy Code.  For Section 707(b) to be applicable, the debts in the case

must be primarily consumer debts, and it must be shown that granting the debtor a Chapter 7

discharge would involve an "abuse" of the provisions of Chapter 7.  It is undisputed that the

debts in this case are primarily consumer debts.  The moving party, in this case the Bankruptcy

Administrator, has the burden of proving abuse pursuant to Section 707.  See In re Lipford, 397

B.R. 320, 326 (Bankr. M.D.N.C. 2008); In re Sale, No. 06-51290, slip op. at *3 (Bankr.

M.D.N.C. Oct. 15, 2007) (2007 WL 3028390).

Section 707(b)(3) of the Bankruptcy Code provides that, even if no presumption of abuse

arises under Section 707(b)(2), a court may still dismiss a case based upon the particular

circumstances of the case.  The Bankruptcy Administrator does not assert that the Debtors failed

the means test of Section 707(b)(2).  The Court need only address whether there is a basis to

dismiss the case under Section 707(b)(3).  Under Section 707(b)(3), the Court must find "abuse."

Lipford, 397 B.R. at 327 ("Unlike the pre-BAPCPA version, § 707(b)(3) does not require a

showing of 'substantial abuse,' but a lower standard of 'abuse.'").  In re Mondragon, No.

05-10665, slip op. at *1 (Bank. D.N.M. Aug. 24, 2007) (2007 WL 2461616); In re Mestemaker,

359 B.R. 849, 856 (Bankr. N.D. Ohio 2007); see also In re Colgate, 370 B.R. 50, 56 (Bankr.

E.D.N.Y. 2007) (acknowledging that BAPCPA lowered the standard from "substantial abuse" to

"abuse" but finding it appropriate to apply the pre-BAPCPA two part test for determining

substantial abuse in evaluating a motion to dismiss under § 707(b)(3)).")

To find abuse, the Court must look to the totality of the circumstances under Section 707(b)(3).  In re Krohn, 886 F.2d 123, 126 (6th Cir.1989); Lipford, 397 B.R. at 328 (court must examine the debtor's future income and future expenses, as well as the debtor's financial situation as of the date of filing); In re McCain, No. 05-14382, slip op. at *2 (Bankr. M.D.N.C. June 16, 2006) (2006 WL 4458679).   This Court looks to the Green factors in the totality of the circumstances.  In re Lipford, 397 B.R. at 328.  Under Green, a court is to determine whether to dismiss a case for abuse of Chapter 7 by considering the totality of the circumstances.  In re Green, 934 F.2d 568, 572 (4th Cir. 1991).  The Fourth Circuit held that in considering the totality of the circumstances, a court should consider the debtor's ability to repay his or her debts, as well as review the following factors:

> (1)  Whether the bankruptcy petition was filed because of sudden illness, calamity, disability or unemployment;
> (2)  Whether the debtor incurred cash advances and made consumer purchases far in excess of his ability to repay;
> (3)  Whether the debtor's proposed family budget is excessive or unreasonable;
> (4)  Whether the debtor's schedules and statement of current income and expenses reasonably and accurately reflect the debtor's true financial condition; and
> (5)  Whether the petition was filed in good faith.

Id.  The Fourth Circuit also created a sixth "primary" factor, "that the majority of the cases hold that the debtor's ability to repay is the primary factor to be considered."  Id.; see also Lipford, 397 at 328-329; Shaw v. U.S. Bankruptcy Adm'r (In re Shaw), 310 B.R. 538, 541 (M.D.N.C. 2004).[1]

---

[1]In his brief, Debtor's counsel argued that "ability to pay" was no longer a relevant factor in a "totality of the circumstances" standard. At the hearing, Debtor's counsel took the stance that "ability to pay" should be given equal weight to the other factors.

**A. Ability to Pay**

An appropriate method of evaluating whether a debtor has the ability to repay his or her debts is to determine what amount of that indebtedness could be repaid in a hypothetical Chapter 13 plan.  In re Behlke, 358 F.3d 429, 437 (6th Cir.2004) (substantial abuse found where the debtors could pay a dividend of 14% to 23%); Lipford, 397 B.R. at 329 (no bright line test); Shaw, 310 B.R. at 542 (dividend of 29% over 36 months was found to be a significant portion of the debtors' debts); In re Norris, 225 B.R. 329, 332-33 (Bankr. E.D. Va. 1998) (substantial abuse found where debtors had ability to repay 47% of debt through a Chapter 13 plan); In re Vianese, 192 B.R. 61, 71 (Bankr. N.D.N.Y. 1996) (substantial abuse found where debtors could pay 19% to unsecured creditors in Chapter 13); In re Jarrell, 189 B.R. 374, 376 (Bankr. M.D.N.C. 1995) (substantial abuse indicated where debtors could pay 80% of debt over 36 months); In re Bryant, 47 B.R. 21, 23 (Bankr. W.D.N.C. 1984) (substantial abuse indicated where debtor, "with only a modicum of restraint," could pay 67% of his unsecured obligations over a 36-month period). But see In re Stewart, 383 B.R. 429, 435 (Bankr. N.D. Ohio 2008)(finding no abuse where debtor potentially could pay a 35% over 60 months).  The greater the ability to pay, the more likely the finding of abuse.  See In re Praleikas, 248 B.R. 140, 145 (Bankr. W.D. Mo. 2000) ("While it may be true that the higher the percentage of debt a Debtor could pay with future earnings, the more likely it is that a court would find substantial abuse, the converse is not true. Otherwise debtors would be rewarded for having more debt, rather than less. Instead of the percentage of debt, the determination of a debtor's ability to fund a Chapter 13 plan is based on a consideration of the debtor's ability to make a substantial effort in repaying his or her debts.")

However, an ability to pay is not per se abuse.  See In re Mondragon, No. 05-10665, slip

op. at \*1 (Bankr. D.N.M. Aug. 24, 2007) (2007 WL 2461616) (court examined the <u>Green</u> factors post-BAPCPA and noted that the ability of a debtor to pay at least a 25% dividend to unsecured creditors in a Chapter 13 case is not per se abuse under Section 707(b)(3)) (citing <u>Mestemaker</u>, 359 B.R. at 858).  However, the <u>Mondragon</u> court found that "a debtor's ability to repay 25% or more of his or her unsecured non-priority debts in a Chapter 13 plan is <u>persuasive evidence</u>" of abuse.  <u>Id.</u> at \*6 (emphasis added).  The court noted that "a debtor's ability to pay is the primary factor even under pre-BAPCPA 'substantial abuse' cases."  <u>Id.</u>  Ultimately, an ability to pay tends to show abuse.  See <u>Lipford</u>, 397 B.R. at 331-332.

### i. The Debtor's Original and Amended Schedules I and J

The Court will evaluate the Debtor's ability to pay by considering his income and expenses as reported on his Schedules I and J.  <u>See Lipford</u>, 397 B.R. at 328.  The Court must look to the Debtor's future income and expenses, as well as evaluate his financial condition at the time of filing.  <u>Id.</u>  According to Schedule I, the Debtor has an average monthly income of $1,836.00.  The Debtor's Schedule J showed average monthly expenses totaling $1,828.00, leaving a monthly net income of only $8.00.

### ii.    Retirement Contributions and Loan Repayments

The Bankruptcy Administrator argues that under a hypothetical chapter 13 plan, the Debtor could pay a significant dividend to unsecured creditors within the next five years.[2]  As the Debtor has $31,773.00 in unsecured debt, the 401(k) Contribution itself ($5,268.00 annually)

---

[2]The Debtor is an above-median income family, and as such, in the event of a conversion to Chapter 13, the applicable commitment period would be five years.  See 11 U.S.C. § 1325(b)(4)(A)(ii)(I).  The loans would be paid off before the end of a Chapter 13 plan.

would result in a $439.00 month increase in pretax income.[3]  The 401(k) Loan Repayment is

made up of payments for two 401(k) loans. The First 401(k) Loan will be complete in April of

2011, freeing an average of $184.00 per month of post-tax income. The Second 401(k) Loan for

$700.00 will be complete in October of 2009, freeing an average of $60.00 per month of post-tax

income.  The total post-tax income created over five years would be $35,472.00.  Using the

Debtor's 2007 federal income tax rate of 12%, the post-tax income of $32,311.00 could be used

to pay unsecured creditors, which would result in a 100% dividend to unsecured creditors.

### iii.    The Debtor's Expenses on His Amended Schedule J

It is appropriate for the Court to consider whether the expenses claimed by a debtor can

be reduced significantly without depriving the debtor of adequate food, clothing, shelter, or other

necessities of life.  McCain, slip op. at *3 (citing In re Engskow, 47 B.R. 314, 317 (Bankr. M.D.

Fla. 2000)).  The Bankruptcy Administrator did not argue that expenses were inflated on the

Debtor's Schedule J.  It appears that such expenses are reasonable.   However, the Child Support

expense will end around June of 2010, leaving $433.00 per month to contribute to unsecured

creditors. This removal of this expense alone would result in a dividend to unsecured creditors of

around 60% over five years.

### iv.    Conclusion

After adding back the 401(k) Contribution and adding in the 401(k) Loan Repayment and

the Child Support when the funds become available, the Debtor is able to pay over 100% of his

unsecured debts over 60 months.  This fact alone demonstrates abuse.  However, the statute

---

[3]The 401(k) contributions are made pre-tax. The 401(k) loan repayments are made with post-tax dollars.   I.R.C. § 72(p).

requires a "totality of the circumstances" approach, so the Court will review the other <u>Green</u>

factors.  <u>See</u> <u>Lipford</u>, 397 B.R. at 332.

### B. Accuracy of Schedules

The Bankruptcy Administrator does not argue that the Debtor's schedules are inaccurate

or misleading, and the Court concludes that they are not.  This factor does not show abuse.

### C. Excessive or Unreasonable Family Budget

Courts look to the facts of a case to determine whether debtors have an excessive or

unreasonable family budget.  The Bankruptcy Administrator does not argue that the Debtor's

expense is unreasonable or excessive for a family of one.  The Court concludes that the Debtor's

budget is not excessive or unreasonable.  This factor does not show abuse.

### D. Good Faith

The Bankruptcy Administrator does not allege that the Debtor did not file his petition in

good faith.  The Court concludes that the Debtor filed his petition in good faith.

### E. Sudden Illness, Calamity, Disability, or Unemployment

The Debtor did not file his bankruptcy due to sudden illness, calamity, disability, or

unemployment.  He testified that he filed because he simply could not pay his bills as they came

due, because he had a decrease in hours and decrease in hourly pay.  However, there has been no

unemployment.  This factor tends to show abuse.

### F. Consumer Purchases Far is Excess of Ability to Repay

The Debtor incurred consumer debts in excess of his ability to repay them.  A debtor's

ability to repay consumer purchases should be interpreted in a manner consistent with a debtor's

reasonable expectations of repayment at the time that the debt was incurred.  <u>In re Beitzel</u>, 333

B.R. 84, 91 (Bankr. M.D.N.C. 2005) (citing Vansickel, 309 B.R. 189, 211 (Bankr. E.D. Va. 2004)).  The Debtor has little secured debt, as the Debtor does not own any real property and only one vehicle.  However, the Debtor had $31,773.00 in unsecured debt, which is entirely consumer credit card debt.  This includes $25,920.00 incurred in 2006 and $5,853.00 in 2007 and 2008.  Because the Debtor's pay was not likely to increase dramatically, the Debtor incurred debts that were inconsistent with his financial status.  Also, because the Debtor has no debts from prior to 2006 and little debt in 2007 and 2008, the Debtor engaged in a dramatic change in spending in 2006, which took unfair advantage of his creditors.  While the Debtor has the ability to repay his unsecured debts in a hypothetical Chapter 13 plan, he would not have been able to pay off his debts without the benefits of restructuring his debts in a Chapter 13 plan.  The Debtor's inability to pay debts for consumer purchases far in excess of the ability to repay without the benefit of a Chapter 13 plan tends to show abuse.

## IV. CONCLUSION

The standard for granting a motion to dismiss pursuant to Section 707(b)(3) is no longer "substantial abuse," but rather just "abuse," a lower standard.  The Debtor did not file due to any sudden illness, unemployment, or disability.  In 2006, the Debtor made consumer purchases in excess of his ability to repay them, but in a Chapter 13 plan he can pay 100% of his unsecured debts over five years.  There are no material inaccuracies in the Debtor's schedules.  The Debtor does not have an excessive or unreasonable budget, nor did he file his petition in bad faith.  Based on the totality of the circumstances and the lower standard of abuse under BAPCPA, the Court finds that allowing the Debtor to continue in a Chapter 7 would constitute an abuse of the Bankruptcy Code within the meaning of Section 707(b)(3).

This opinion constitutes the Court's findings of fact and conclusions of law.  A separate order shall be entered pursuant to Fed. R. Bankr. P. 9021.

**IN THE UNITED STATES BANKRUPTCY COURT**

**FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**
**WINSTON-SALEM DIVISION**


IN RE:                                    )
                                          )
JEFFREY JOHN CHRISTIANSEN                  )        Case No. 08-50871
                                          )
                    Debtor.               )
_____)


**PARTIES IN INTEREST**

Jeffrey Christiansen

Jeffrey P. Farran, Esq.

Michael D. West, Bankruptcy Administrator

Bruce Magers, Chapter 7 Trustee